■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v OMIE SAUNDERS, Appellant. — Appeal by defendant from a judgment of the Supreme Court, Suffolk County (Stark, J.), rendered June 13, 1978, convicting him of murder in the second degree, upon a jury verdict, and imposing sentence. Matter remitted to the Supreme Court, Suffolk County, to hear and report on whether the defendant knowingly and voluntarily consented to the entry on his behalf of a plea of not guilty by reason of mental disease or defect and to the trial strategy adopted by his assigned counsel in furtherance of that defense. Special attention must be given to the questions of (1) what persons spoke to the defendant concerning the plea and defense, (2) what explanations were given to the defendant concerning the nature of the plea and ramifications of the defense strategy based thereon, including the disclosure to the jury of the defendant's past bad acts and crimes and the waiver of a *Huntley* hearing, (3) when the explanations were made and (4) what were the defendant's responses. The appeal is held in abeyance in the interim. The court is to file its report with all convenient speed. At trial, the People demonstrated by overwhelming evidence that the defendant was the person who killed the victim, a motel manager who had been shot twice from a point outside his office and who was found dead approximately 15 minutes after the crime. The discovery of the body was made by a maid who had entered the office before the crime and had seen the decedent speaking to a man who was dressed all in brown. Two 30.30 shell casings were found outside the motel office. During the autopsy, an expended bullet of the same type was found lodged in the body. The police were aware that the defendant possessed a 30.30 Marlin rifle because on the day before the crime he had visited the police station with the rifle, explaining that he had just purchased it and was seeking to determine whether it had been stolen. Shortly after the crime, the defendant, dressed all in brown, had voluntarily walked into the police station but had then departed without explaining himself. Upon driving away the defendant was arrested for driving without a license. By the time the arresting officer and the defendant re-entered the police station, the murder at the motel had been reported. After being advised of his *Miranda* rights, the defendant was patted down and a 30.30 cartridge was found in his coat. A later search of his vehicle revealed another of these cartridges which was of the same type as the shell casings found at the scene of the crime. Detective O'Kula conducted an investigation at the motel and upon returning to the precinct, took the defendant into his custody and again gave him the *Miranda* warnings. The defendant confessed to the crime, admitting that he had shot the victim twice through a window while the latter was seated at a desk. On the strength of the confession, a warrant was obtained to enable the police to search the defendant's room at the motel. A 30.30 Marlin rifle with one live round was discovered in the defen-

dant's room. The rifle was examined for fingerprints and two lateral prints were taken. The prints were those of the defendant. Testing of the rifle and cartridges by an expert established that the bullets which killed the victim were fired from the defendant's rifle. Defendant's trial counsel chose an insanity defense to combat the prosecution's case. The defense medical expert opined that the defendant was not responsible for his acts by reason of mental disease. Counsel also attempted to establish the defense by adducing proof of the defendant's extensive psychiatric history and his record of past crimes and bad acts. Counsel's defense strategy was inconsistent with a factual innocence defense, and therefore a *Huntley* hearing to test the admissibility of defendant's confession was waived and no challenges to the evidence establishing the defendant's commission of the crime were made. In open court defendant objected to the strategy adopted by his assigned counsel, stating in substance that he was not guilty and wished the case to be tried on the theory of his factual innocence. He also objected to the disclosure of his prior history of other criminal acts upon the ground that such disclosure would prejudice the jury against him. Because of this dispute over strategy he requested that his assigned counsel be relieved. Defense counsel responded that defendant was "crazy" and himself asked to be relieved upon the ground that in his professional judgment the defense of insanity was proper and that because of the irreconcilable difference of opinion with his client on that subject he could not conscientiously proceed with the case. The court thereupon ordered a competency hearing to be held pursuant to CPL 730.30, apparently to determine whether the defendant had the capacity to understand the nature and ramifications of the defense of not guilty by reason of mental disease or defect, to make a rational, voluntary decision concerning its assertion, and to assist counsel in that or any other defense properly asserted on his behalf. Trial was recessed and two psychiatrists examined the defendant. At the resumption of the trial on the following morning, both psychiatrists stated their opinion that defendant was not an incapacitated person and was fit to proceed. Defense counsel sought a hearing on their findings. One of the psychiatrists, Dr. O'Neil, was a proposed prosecution rebuttal witness on the issue of defendant's alleged insanity at the time of the crime. Defense counsel moved to disqualify Dr. O'Neil on that ground, but the court denied the motion holding that the issues of defendant's sanity at the time of the commission of the offense and of his present capacity to understand and assist in his own defense, were separate and distinct. Dr. O'Neil testified that during the examination defendant stated that his lawyer had not told him about the insanity defense. Dr. O'Neil then told defendant that that defense had been asserted on his behalf, explained its nature, and related the fact that, if acquitted on that ground, defendant would be confined to a mental institution rather than a prison. According to Dr. O'Neil, defendant stated that he now understood the defense and why his counsel wished to bring his past offenses and mental disabilities to the attention of the jury, and that he now considered his counsel to be "a very fine attorney, and I want to keep him." Thereafter, defendant took the stand and stated that he now concurred with counsel's decision to forego a hearing on the admissibility of his confession, to allow his prior crimes to be brought to the attention of the jury, and to a defense upon the basis that he killed the victim "but that the reason [he] did it was because [he was] sick". Defendant promised to co-operate with his lawyer, upon the understanding that counsel was acting in his best interests. Based on the testimony of the doctors and the defendant's statement, the court held that defendant was not an incapacitated person and tacitly deemed his motion to relieve defense counsel, and counsel's own motion for that same relief, withdrawn. The case was then tried in accordance with the

strategy proposed by defense counsel. The jury, however, found defendant guilty as charged. On this appeal defendant argues that his trial counsel's decision to forego the factual innocence defense establishes that he was denied the effective assistance of counsel. We disagree. This record establishes a competently presented and somewhat persuasive defense of legal insanity. There was, however, other strong evidence that defendant was not insane at the time of the commission of the crime. The fact that defendant was not acquitted by reason of mental disease or defect does not establish that he was denied the effective assistance of counsel (see *People v Baldi,* 54 NY2d 137). The crucial issue in this case is whether defendant knowingly and voluntarily waived his objections to the trial strategy adopted by his assigned counsel and therefore withdrew his request that counsel be relieved. Defendant contends that his waiver was neither voluntarily nor intelligently made. So far as this record reveals, the only person who explained the insanity defense to the defendant was a prosecution psychiatrist. There should be a hearing to determine exactly what defendant was told concerning the insanity defense and the trial strategy proposed by counsel in furtherance thereof, who made such explanations, what defendant's responses were thereto, and the conditions under which such explanations were made, and to take into account any other relevant factors bearing on the question of whether defendant's waiver was knowing and voluntary. Mollen, P. J., Damiani, O'Connor, Thompson and Brown, JJ., concur.